Pietro Mario PUGLIANO, Plaintiff,

v.

Paul STAZIAK, Peter Pollice, Leonard Monti, Enoc N. Johnson, Thomas Welsh, Vincent Tambura, Rita Henderson, and Marion Sarnic, Defendants.

Civ. A. No. 64–78.

United States District Court
W. D. Pennsylvania.

June 30, 1964.

Pietro Mario Pugliano, pro se.

David W. Craig, City Sol., Pittsburgh, Pa., for defendants, Paul Staziak, Peter Pollice, Leonard Monti and Enoc N. Johnson.

Rothman, Gordon & Foreman, Pittsburgh, Pa., for defendant, Marion Sarnic.

Lipsitz & Nassau, Pittsburgh, Pa., for defendant, Rita Henderson.

Louis Abromson, Daniel T. Zamos, Pittsburgh, Pa., for defendant, Vincent Tambura.

Richard C. Witt, Pittsburgh, Pa., for defendant, Thomas Welsh.

MARSH, District Judge.

On January 29, 1964, this member of the court granted plaintiff's petition for leave to proceed in forma pauperis, 28 U.S.C. § 1915, and directed the filing of his complaint. The complaint alleges that defendants, Staziak, Pollice and Monti, acting under color of law in their capacities as police officers of the City of Pittsburgh, formed a conspiracy with defendant, Sarnic (a private individual), to deprive Pugliano of his constitutional rights when the said police officers "deliberty [sic] induced Mr. Sarnic to give false evidence against the plaintiff causing him to be falsely indicted and con-victed, even though evidence, which was in the possession of the police officers at that time, revealed plaintiff was in no way involved in any crimes." The other defendants are Enoc N. Johnson, a police magistrate of the City of Pittsburgh, who presided over preliminary hearings on criminal charges against Pugliano, Sarnic, and one Geraldine Blair, and then bound that trio over for Grand Jury action; Rita Henderson, a private individual, who testified at one of those preliminary hearings and purportedly induced Geraldine Blair to give a false statement implicating Pugliano in certain crimes; Thomas Welsh, the prosecuting attorney at the criminal trial of Pugliano, Sarnic, and Blair; and Vincent Tamburo,[1] a member of the Legal Aid Society and defense counsel for Pugliano at the criminal trial. These latter defendants are alleged to have become members of the conspiracy formed by the police officers and Sarnic by virtue of certain alleged acts and omissions incident to the preliminary hearings (committed by defendants Johnson and Henderson) and to the criminal trial itself (committed by defendants Welsh and Tamburo). The complaint seeks to recover damages from the defendants pursuant to §§ 1983–1986, 42 U.S.C.,[2] and asserts jurisdiction under 28 U.S.C. § 1343.

---

1. Although named in the complaint as Vincent Tambura, it is clear from the affidavit and other material filed by this defendant that the correct spelling of his name is "Tamburo".

2. "§ 1983. Civil action for deprivation of rights

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. R.S. § 1979."

"§ 1985. Conspiracy to interfere with civil rights—Preventing officer from performing duties

" * * *

"(2) * * * [I]f two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, * * *;

"(3) If two or more persons in any State or Territory conspire * * * for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; * * * in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such con-

The defendant, Welsh, has moved to dismiss, asserting, inter alia, that the complaint "fails to state a cause of action against this defendant" [i. e., fails to state a claim against Welsh upon which relief can be granted]. The other defendants answered the complaint and thereafter filed motions for summary judgment, supported by affidavits. We are of the opinion that the motion to dismiss and the motions for summary judgment should be granted.

### Failure to state a claim upon which relief can be granted.

■ In an action for damages under the Civil Rights Act, the plaintiff must allege highly specific facts. United States ex rel. Hoge v. Bolsinger, 211 F. Supp. 199 (W.D.Pa.1962), aff'd 311 F. 2d 215 (3d Cir. 1962), cert. denied 372 U.S. 931, 83 S.Ct. 878, 9 L.Ed.2d 735; Roberts v. Barbosa, 227 F.Supp. 20 (S.D. Cal.1964); cf. Winkler v. Pringle, 214 F.Supp. 125 (W.D.Pa.1963), aff'd 324 F. 2d 613 (3d Cir. 1963), cert. denied, 84 S.Ct. 1169. It is not enough to state bare conclusory allegations without support in facts alleged. United States ex rel. Hoge v. Bolsinger, supra; Winkler v. Pringle, supra; Powell v. Workmen's Compensation Bd. of State of New York, 327 F.2d 131 (2d Cir. 1964); Crawford v. Lydick, 179 F.Supp. 211 (W.D.Mich.1959), aff'd 280 F.2d 426 (6th Cir. 1960); Dunn v. Gazzola, 216 F.2d 709 (1st Cir. 1954); Ortega v. Ragen, 216 F.2d 561 (7th Cir. 1954); Yglesias v. Gulfstream Park Racing Ass'n, 201 F.2d 817 (5th Cir. 1953); McGuire v. Todd, 198 F.2d 60 (5th Cir. 1952); Copley v. Sweet, 133 F. Supp. 502, 507–508 (W.D.Mich.1955), aff'd 234 F.2d 660 (6th Cir. 1956), cert. denied 352 U.S. 887, 77 S.Ct. 138; Campbell v. Glenwood Hills Hospital, Inc., 224 F.Supp. 27 (D.Minn.1963); Williamson v. Waugh, 160 F.Supp. 72 (S.D.W.Va. 1958).

■ The complaint gives no hint of the nature of the "false evidence" Sarnic was "induced" to give by the police officers, nor the nature of the "evidence" in the possession of the police officers which purportedly "revealed plaintiff was in no way involved in any crimes." It avers that defendant, Rita Henderson, "entered" the conspiracy when she induced one Geraldine Blair to give to some

spiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators. R.S. § 1980."

"§ 1986. Same; action for neglect to prevent

"Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured * * * for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; * * * and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action * * *. But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued. R.S. § 1981."

Quite obviously, no action is sustainable under § 1986 inasmuch as more than one year intervened between plaintiff's convictions and sentencing on May 24–25, 1962, and the commencement of this action in January, 1964. And while plaintiff also cites 18 U.S.C. § 241 as giving rise to his cause of action, it is clear that such section may not be made the basis of a civil action for damages. Hanna v. Home Insurance Company, 281 F.2d 298 (5th Cir. 1960); Watson v. Devlin, 167 F.Supp. 638 (E.D.Mich.1958), aff'd 268 F.2d 211 (6th Cir. 1959); Agnew v. City of Compton, 239 F.2d 226 (9th Cir. 1956); Copley v. Sweet, 133 F.Supp. 502 (W.D.Mich.1955), aff'd 234 F.2d 660 (6th Cir. 1956), cert. denied 352 U.S. 887, 77 S.Ct. 138, 1 L.Ed.2d 91; Mattheis v. Hoyt, 136 F.Supp. 119 (W. D.Mich.1955). Nor is 42 U.S.C. § 1984 relevant.

We are, therefore, concerned solely with the applicability of §§ 1983 and 1985.

unspecified person a false statement regarding the plaintiff, without revealing the nature of such alleged false statement or stating facts indicating that Henderson knew of or associated herself with the alleged conspiracy formed by the police officers and Sarnic. It avers that defendant, Johnson, "entered the conspiracy formed by the others, by deliberately submitting to the whims [unspecified] of Rita Henderson"; that he conducted the plaintiff's preliminary hearings in a manner "in direct conflict with the required procedures of his office"; that he bound plaintiff over for Grand Jury action "on the false statement made by Geraldine Blair" even while concurrently binding Geraldine Blair over for perjury with regard to such statement; that he refused to hold the preliminary hearing in abeyance pending the tardy arrival of plaintiff's counsel;[3] and that he "refused to take action against Rita Henderson, when it was learned she induced Geraldine Blair to give the false statement against plaintiff." The complaint alleges that plaintiff was found guilty by a jury on two counts of burglary, seven counts of forgery and uttering of written instruments, and one count of aggravated assault and battery "as a result of the conspiracy formed by the herein named defendants", but states no facts indicating even the remotest causal connection between such convictions and any alleged wrongdoing by the defendants, Henderson or Johnson. As in the case of Rita Henderson, the complaint does not aver that Johnson knew of or associated himself with any conspiracy on the part of Sarnic and the police officers.

Nor does the complaint aver that the only evidence presented at the preliminary hearing to justify holding Pugliano for the Grand Jury was the "false statement" given by Geraldine Blair or that such "false statement" or any testimony by Geraldine Blair was presented against plaintiff at the criminal trial. Any suggestion, if such it is meant to be, that the plaintiff suffered damage compensable under § 1983 or § 1985 when defendant Johnson failed to institute criminal proceedings against Rita Henderson for alleged subornation of perjury is patently frivolous.

As to the defendant, Welsh, the complaint avers that at or about the time of the criminal trial, he "did willfully, with malice aforethought, and under the color of law, join the conspiracy formed by the others, and used subversive methods" to gain plaintiff's convictions; that he was in possession of evidence which purportedly revealed plaintiff's innocence and yet prosecuted him; and that he knowingly used perjured evidence to secure plaintiff's convictions. It is not averred what "subversive methods" or "perjured evidence" Welsh is supposed to have employed at the trial, nor what evidence was in his possession that "revealed" plaintiff's innocence. Nor is it alleged that Welsh had any knowledge of a conspiracy formed beforehand by the other defendants.

As to the defendant, Tamburo, the complaint avers that "the records will reveal that Mr. Tambura was a part of the conspiracy which was already formed to falsely convict and deprive plaintiff of his Constitutional Rights."[4] This is

---

3. We invite the attention of the litigants to the case of Commonwealth ex rel. Whiting v. Rundle, 414 Pa. 17, 198 A. 2d 568 (1964).

4. Nowhere in the complaint does plaintiff specify the constitutional rights he claims to have been deprived of as a result of the alleged conspiracy. While he claims that his imprisonment pursuant to convictions wrongfully obtained constitutes "cruel and unusual punishment" within the meaning of the Eighth Amendment to the Constitution of the

United States, we cannot agree that the Eighth Amendment is applicable to imprisonment under standing judgments of conviction for criminal acts. We assume that plaintiff means to state a cause of action under 42 U.S.C. § 1983 on the theory that the police officers, police magistrate and prosecuting attorney, on their own and in conspiracy with those defendants acting as private individuals, subjected plaintiff, or caused him to be subjected, to the deprivation of due process of law in procuring criminal convictions

presumably the conclusion to be drawn from certain other of plaintiff's allegations, to wit:

"On or about May 23, 24, 1962, herein named defendant, Vincent Tambura, an attorney and member of the Legal Aid Society, was appointed by the Court to defend the plaintiff. The records will reveal that plaintiff never saw Mr. Tambura prior to trial to prepare a defense, except ten minutes prior to the selection of the jury. As a result, Mr. Tambura tried to induce the plaintiff to enter a plea of guilty to all charges against him. When plaintiff refused to do so, Mr. Tambura did willfully and with malice aforethought, conduct the plaintiff's defense in such a manner so as to bring about a conviction."

Aside from the fact that the complaint fails to aver the means allegedly employed by Tamburo to bring about plaintiff's convictions, there is no allegation that Tamburo was even remotely aware of any conspiracy afoot among the other defendants. Unless he wronged plaintiff in furtherance of a conspiracy participated in by persons acting under color of state law, this court would not have jurisdiction of any suit against him. It is clear that redress for the invasion by private individuals [5] (not acting in conspiracy with state officers) of the civil rights of another must be sought in the state courts absent diversity of citizenship. Williams v. Yellow Cab Co. of Pittsburgh, Pa., 200 F.2d 302 (3d Cir. 1952), cert. denied sub nom. Dargan v. Yellow Cab Co., 346 U.S. 840, 74 S.Ct. 52, 98 L.Ed. 361; Koch v. Zuieback, 194 F. Supp. 651 (S.D.Cal.1961), aff'd 316 F.2d 1 (9th Cir. 1963); Smith v. Jennings, 148 F.Supp. 641 (W.D.Mich.1957). This jurisdictional limitation also affects the plaintiff's claims against defendants, Henderson and Sarnic, in the absence of adequate allegations that those private individuals conspired with the police officers, police magistrate, or prosecuting attorney.

In the circumstances of this case, the unsupported conclusory allegations of the complaint render it fatally deficient, and, accordingly, the motion to dismiss filed by defendant, Welsh, will be granted for the reason that the complaint fails to state a claim against that defendant upon which relief can be granted.

There is no genuine issue as to any material fact, and the movants for summary judgment are entitled to judgment as a matter of law.

From the pleadings, affidavits, counter-affidavits, testimony, and exhibits on file, it is uncontroverted that on May 24, 1962, the plaintiff was found guilty of two counts of burglary (burglaries committed at the Windhorst Television Sales & Service Company and the Ilcisin Pharmacy, both in Pittsburgh, in November and December, 1961), seven counts of forgery and uttering of written instruments (as to certain blank money orders taken in the Ilcisin burglary), and one count of aggravated assault and battery (perpetrated upon the defendant, Sarnic, in a police station when plaintiff was first confronted with Sarnic's statement that

---

against him through the use of perjured evidence. Certainly, the complaint alleges no purposeful discrimination against plaintiff as a person or as a member of a class of persons so as to give rise to a cause of action under 42 U.S.C. § 1985 on the theory that he was denied or deprived of equal protection of the laws or equal privileges and immunities under the laws. Joyce v. Ferrazzi, 323 F.2d 931 (1st Cir. 1963); Moss v. Horning, 314 F. 2d 89 (2d Cir. 1963); Egan v. City of Aurora, 291 F.2d 706 (7th Cir. 1961); Jennings v. Nester, 217 F.2d 153 (7th Cir. 1954), cert. denied 349 U.S. 958, 75 S.Ct. 888, 99 L.Ed. 1281; Selico v. Jackson, 201 F.Supp. 475 (S.D.Cal.1962); Tsermengas v. Pontiac Press, 199 F.Supp. 557 (E.D.Mich.1961).

5. An attorney's status as an "officer of the court" does not make him an officer of the Commonwealth of Pennsylvania or of any governmental subdivision thereof. He is just another private individual for purposes of §§ 1983 and 1985. Cf. Rhodes v. Meyer, 225 F.Supp. 80, 93–94 (D.Neb.1963).

he, Sarnic, had received the Ilcisin money orders from Pugliano). It is also clear that the defendant, Tamburo, in behalf of the plaintiff, promptly made motions in arrest of judgment on the burglary convictions, and that prior to the sentencing the next day (May 25, 1962), the trial judge granted the motion relating to the Windhorst burglary, but denied the motion relating to the Ilcisin burglary. It is also uncontroverted that in late August or early September, 1962, one Frederick Pent confessed to the Ilcisin burglary, whereupon the 2½ to 5-year sentence plaintiff had been sentenced to serve for burglary (*concurrently* with a 2½ to 5-year sentence for forgery and uttering of written instruments) was vacated. It also appears that on September 12, 1962, after the sentence for the Ilcisin burglary was vacated, the sentence for forgery and uttering of written instruments was vacated, and plaintiff signed pleas of guilty to the seven counts of forgery and uttering, waiving appointment of counsel and agreeing to pronouncement of sentence forthwith. It further appears that he was then re-sentenced to a *lesser* term of 11½ to 23 months on the forgery and uttering counts.[6] Inasmuch as he has pleaded guilty to some of the crimes for which he had been convicted, and has not shown that he was required to spend *additional* time in confinement by virtue of the judgment of conviction on the one burglary count, manifestly he has sustained no damage as a result of that conviction even if any of his constitutional rights were violated relative to the procurement thereof.

■ If the complaint can be read as stating a sufficient claim against any of those defendants who have moved for summary judgment, and we do not think it can be so read, we are convinced that the pleadings, affidavits, counter-affidavits, testimony and exhibits on file show that there is no genuine material issue of fact and that all of the movants for summary judgment are entitled to judgment as a matter of law.[7] The defendants, Staziak, Pollice, Monti, Johnson, Sarnic, Henderson, and Tamburo, submitted in support of their motions detailed affidavits categorically denying the existence of any such conspiracy or other wrongdoing as was alleged in the complaint. This required plaintiff to "set forth specific facts showing that there is a genuine issue for trial." Rule 56(e), Fed.R.Civ. P. He has not done so. Cf. Skolnick v. Lefkowitz, 329 F.2d 716 (2d Cir. 1964). Plaintiff did submit counter-affidavits denying the averments of the movants' affidavits, but, of course, this was not the setting forth of "facts". The counter-affidavits also averred, generally, that the transcripts and other records of sundry preliminary hearings and criminal trials (including not only the criminal trial directly at the heart of this suit, but two other full-length criminal trials as well) would support plaintiff's allegations of wrongdoing by the defendants, and at oral argument plaintiff submitted these records as exhibits to show that, in his opinion, there was indeed a genuine material issue of fact to be tried. These exhibits appear to be materials which may properly be considered on motions for summary judgment (6 Moore, Federal Practice, ¶ 56.-11), but, in our opinion, they do not show facts or circumstances admissible at a trial from which a reasonably minded

6. This all appears from official records pertaining to the forgery and uttering counts, submitted as Tamburo's Ex. B. We also observe that plaintiff, in his counter-affidavit to the affidavit submitted by defendant, Sarnic, failed to respond to Sarnic's sworn statement that he, Pugliano, had pleaded guilty to the forgery and uttering charges and had thereupon been sentenced to 11½ to 23 months in jail.

7. Following the filing of the motions for summary judgment, we directed the United States Marshal to bring the plaintiff-prisoner before us so that we could be satisfied that he understood the ramifications of Rule 56, Fed.R.Civ.P. In accordance with our order, the plaintiff was produced in court on April 28, 1964, at which time we endeavored to make him understand his obligations as respondent in connection with the said motions.

person can draw an inference of any alleged conspiracy or other actionable wrongdoing which operated to deprive plaintiff of due process. Cf. Morgan v. Sylvester, 125 F.Supp. 380, 389–390 (S.D.N.Y.1954)[8], aff'd 220 F.2d 758 (2d Cir. 1955), cert. denied 350 U.S. 867, 76 S.Ct. 112, 100 L.Ed. 768. These exhibits, together with the "false" statement given by Geraldine Blair, testimony given in plaintiff's behalf at the argument by Frederick Pent that, after he confessed to the Ilcisin burglary three months following Pugliano's conviction therefor, one or two of the police officer-defendants tried to persuade him to identify Pugliano as a recipient of the goods stolen in that burglary, and several other highly irrelevant fragments of "evidence" tendered, were conceded by plaintiff to comprise his entire case against the defendants. Plaintiff contended at oral argument that the existence of the alleged conspiracy is obvious, in that such exhibits and other tendered evidence reveal that the police officers "supported" the "perjured" testimony given at the criminal trial by Sarnic; that the police officers testifying at the trial occasionally made errors respecting their recollections of the chronology of preliminary hearings and other events attendant to the processing of the criminal charges; that the Commonwealth's evidence at the criminal trial failed to include all relevant facts concerning the Windhorst and Ilcisin burglaries, the disclosure of which would have presumably resulted in a verdict of acquittal on all charges; and, in effect, that Tamburo continually failed to follow plaintiff's direction and legal advice in the conduct of the defense. This posture is absurd. While it is true that direct evidence is rarely available to prove a conspiracy, and that resort must generally be made to circumstantial evidence thereof, we do not believe that a jury or other fact-finder can reasonably infer a conspiracy of the type alleged by plaintiff from the mere facts that the investigating police officers and the alleged perjurer (Sarnic) testified at the same trial and that the police officers' testimony concerning events and dates appeared deficient in some immaterial respects, or by reading trial transcripts and passing judgment upon whether the prosecuting attorney and defense attorney acted conspiratorially when they asked or failed to ask certain questions of witnesses, or made or failed to make various objections to evidence, or made or failed to make various offers of evidence.[9] Nor, in our opinion, may a fact-finder reasonably infer conspiracy or other wrongdoing from the failure of the prosecuting attorney to elicit testimony from the investigating officers that on the occasions of the Windhorst and Ilcisin burglaries, the premises adjoining each of those establishments were also burglarized, and, yet, plaintiff was not charged with such other burglaries. This last, apparently, was the nature of the evidence which, according to plaintiff, would have indicated to the investigating officers and prosecuting attorney that plaintiff was innocent of all charges—burglaries, forgery and uttering of written instruments and aggravated assault and battery. A reading of the transcript of the criminal trial (plaintiff's Ex. 2) discloses that the Commonwealth had no direct testimony at all that Pugliano had committed the Windhorst and Ilcisin burglaries. Rather, the two burglary counts were submitted to

8. At page 388 of 125 F.Supp., that Court makes this highly appropriate observation:

"That the complaint is grounded in conspiracy does not preclude the granting of a motion for summary judgment. Nor does the fact that the complaint and the allegations thereunder are to be construed liberally, bar such a motion. A litigant appearing pro se acquires no greater right than any other litigant and such appearance may not be used to deprive defendants of the same rights enjoyed by other defendants."

9. Of course, plaintiff is not permitted to go to trial in this case on the basis of his hope that the movants will contradict their respective affidavits or otherwise prove his case on cross-examination. Cf. Prusinki v. Holland, 228 F.Supp. 959 (E.D.Wis.1964), and cases cited therein.

the jury upon evidence that the Windhorst and Ilcisin establishments were in fact burglarized and upon Sarnic's testimony that some of the money orders stolen in those burglaries were in Pugliano's possession shortly after the commission of the burglaries, and, in fact, that he (Sarnic) joined plaintiff and Geraldine Blair in forging and uttering them. Plaintiff has not shown or attempted to show that at the time of his criminal trial the investigating officers (Staziak, Pollice and Monti) had discovered that anyone else was responsible for the burglaries of the premises adjoining the Windhorst and Ilcisin places of business. The failure of the officers testifying at trial (Staziak and Monti) to offer evidence of the burglaries of such adjoining premises when, as of that time, they had no evidence linking plaintiff or anyone else to such burglaries scarcely amounted to the suppression of evidence revealing plaintiff's innocence of any of the crimes for which he was convicted, nor does it appear consistent with anything but proper caution. If anything, such testimony could have been prejudicial to the plaintiff.

Inasmuch as plaintiff has invited us to peruse the various exhibits offered by him at argument on the motions for summary judgment, we might make mention of some of the facts stated in plaintiff's Ex. 1, a transcript of the preliminary hearing commenced before defendant, Johnson, on February 16, 1962, and continued to and concluded on February 26, 1962. The transcript indicates that on February 16th, Geraldine Blair testified that she had received the Ilcisin money orders from Sarnic. On February 26, 1962, the defendant, Staziak, testified at the continued hearing that Geraldine Blair had on February 19th voluntarily given the police a sworn statement that Pugliano had given the Ilcisin money orders to Sarnic and herself. Geraldine Blair thereupon testified that she had given such a sworn statement, but that the statement was a lie induced by promises from Rita Henderson. She then reverted to her original position that Sarnic had given her the money orders. She also testified that she and the plaintiff (Pugliano) were married on February 21st.[10] Referring again to plaintiff's Ex. 2, the criminal trial transcript, we note that Geraldine Blair Pugliano, while herself pleading guilty to all charges prior to the presentation of the Commonwealth's case against the plaintiff, was not called to testify in behalf of her new husband in spite of Sarnic's damaging testimony against him.[11] We attach no significance

10. In his supplemental brief received June 16, 1964, p. 13, plaintiff characterizes as "suppression of evidence" the prosecution's failure to introduce at the criminal trial the conflicting statements made by Geraldine Blair on February 16th, 19th, and 26th, 1962. Aside from the fact that one of those statements *implicated* Pugliano and that the prosecution would have been in the position of calling Geraldine Blair Pugliano to testify against her husband, we do not believe that those statements, the content of which were well known to plaintiff at the time of the criminal trial, can by any stretch of the imagination constitute suppressed evidence. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and United States ex rel. Butler v. Maroney, 319 F.2d 622 (3d Cir. 1963), cited by plaintiff, are not in point.

11. In his supplemental brief received June 16, 1964, nearly one month after oral argument on the pending motions, plaintiff, for the first time, claimed that Tamburo "refused to use Geraldine Blair as a defense witness in behalf of plaintiff's defense even though plaintiff was willing to waive the law which governs testimony given by husband and wife" [Pennsylvania law renders a wife incompetent to give testimony against her husband except under circumstances not here relevant]. This is alleged to have been a deliberate omission committed by Tamburo in furtherance of the conspiracy. This contention is (a) untimely, (b) not in affidavit form, (c) unsupported by any affidavit from Geraldine Blair Pugliano stating that she would have testified *favorably* to plaintiff if she had been called, and (d) in the face of the transcript of that trial which, at pp. 98–116, discloses that plaintiff *personally* was given full opportunity at sidebar to submit a list of prospective witnesses to the trial judge, and that the list of names

to these circumstances, but recite them only to provide a more complete background against which this action may be viewed.

■ In sum, we are convinced that plaintiff has not demonstrated the existence of a genuine, material, triable issue of fact regarding any conspiracy or other wrongdoing alleged in the complaint. Rather, the court is irresistibly led to the conclusion that the plaintiff convinced himself after his trial that everyone who participated in bringing about the convictions, i. e., the investigating officers, the committing magistrate, witnesses who testified before the magistrate, a witness at the trial, the prosecuting attorney, and his own counsel (who defended him gratuitously) unlawfully conspired to secure his convictions through the use of perjured testimony and suppression of exculpatory evidence. It is easy for a disgruntled prisoner to state his conclusions, and to even believe, that those responsible for the real or imagined injustice were guilty of the rankest kind of malice. But he cannot go to trial in a Civil Rights Act case solely on the basis of his speculative beliefs and the unreasonable inferences he seeks to draw from volumes of court records. Mindful of our obligation to sit as arbiters of state court decisions only when constitutionally necessary, we find absolutely no reason to undertake such a role in this case.

Other grounds have been asserted in behalf of the various motions made by the defendants, including contentions that plaintiff's action is barred by the applicable analogous state statute of limitations relating to malicious prosecution actions,[12] that the defendants, Welsh (prosecuting attorney) and Johnson (police magistrate) are cloaked with quasi-judicial immunity against suits of this nature,[13] that the doctrines of collateral estoppel and res judicata prevent the reconsideration in this civil damage suit of issues involved in prior criminal proceedings, and that §§ 1983 and 1985 cannot be used to collaterally attack standing judgments of conviction (at least, not prior to the exhaustion of state remedies). But in view of the result we have reached, it is unnecessary for us to decide those questions.

We express our warmest appreciation to Kalman A. Goldring, Esq., for undertaking as amicus curiae to advise whether the court had subject-matter jurisdiction and whether the complaint stated a claim upon which relief could be granted. Mr. Goldring performed exemplary service for the court in this regard and merits the highest commendation for accepting and performing this most difficult assignment.

An appropriate order will be entered.

submitted by him did not include the name of Geraldine Blair Pugliano (plaintiff's Ex. 2).

12. 12 Purdon's Pa.Stat.Ann. § 51, applied in Weiner v. City & County of Philadelphia, 184 F.Supp. 795 (E.D.Pa.1960). Compare: Conard v. Stitzel, 225 F.Supp. 244 (E.D.Pa.1963), involving a different factual situation, but which case, while not cited by plaintiff, nonetheless served as a source of considerable inspiration to

him. Plaintiff's brief, received May 14, 1964, pp. 6–7.

13. As to whether the decision in Picking v. Pennsylvania R. Co., 151 F.2d 240 (3d Cir. 1945), retains any vitality on the issue of judicial immunity against Civil Rights Act damage suits, compare Perkins v. Rich, 204 F.Supp. 98 (D.Del. 1962), aff'd 316 F.2d 236 (3d Cir. 1963), with Ginsburg v. Stern, 148 F.Supp. 663 (W.D.Pa.1956), aff'd 251 F.2d 49 (3d Cir. 1958).