Stephen SINCHAK

v.

Hugo J. PARENTE, individually and as Mayor of the City of Monessen.

Civ. A. No. 66–460.

United States District Court
W. D. Pennsylvania.

Dec. 29, 1966.

Allen N. Brunwasser, Pittsburgh, Pa., for plaintiff.

Walter T. McGough, Steven A. Stepanian, II, Pittsburgh, Pa., for defendant.

## OPINION

ROSENBERG, District Judge.

The plaintiff, Stephen Sinchak, brings this action for damages based upon the provisions of the Civil Rights Act (42 U.S.C. § 1981 et seq.), its criminal counterpart (18 U.S.C. §§ 241–242) and general jurisdiction (28 U.S.C. § 1340), the Constitution of the United States and the Constitution of the State of Pennsylvania, together with Federal legislation providing for the entry of action under authority of deprivation of Federal rights. In addition, the plaintiff seeks to create a common-law cause of action here.

In the complaint as filed, the plaintiff alleges that he is and was a duly elected councilman of the City of Monessen, Westmoreland County, Pennsylvania; that the defendant is and was the duly elected mayor of the City of Monessen, Westmoreland County, Pennsylvania; that both the plaintiff and the defendant were candidates in a primary election on May 18, 1965 for the office of Mayor with the defendant seeking re-election; that in order to stifle opposition, prevent free speech and free election, the defendant and others conspiring with him took the following actions: (a) filed a libelous advertisement in a local newspaper on May 11, 1965, (b) retained the largest law firm in Western Pennsylvania to enter suit for civil damages and filed the same on May 11, 1965 in the Court of Common Pleas, Westmoreland County; (c) caused Westmoreland Engineering Company, Inc., as plaintiff to enter a suit against the defendant based on an alleged libel; (d) improperly used discovery processes under the Pennsylvania Rules of Civil Procedure, Rule 4007, 12 P.S. Appendix, for harassing and intimidating the defendant; (e) also used this process for the purpose of a grand jury investigation to flush out supporters of the defendant; (f) used said discovery processes for the purpose of collecting evidence for a proposed criminal prosecution of the plaintiff and others; and (g) requested a judge of the Common Pleas Court to place the plaintiff in contempt because he did not answer; that the defendant used his great wealth and power to deprive the plaintiff of his constitutional rights; that the defendant's activity and abuse of court process was an abuse of authority by him as Mayor and as a private citizen; that the incarceration for failure to answer interrogatories amounted to false imprisonment and that the actions of the defendant in all of this was done to make the plaintiff a "pariah" and thus deprive him and others of their rights as citizens in seeking public office.

The defendant has filed a Motion to Dismiss on the grounds (1) that there is no jurisdiction and (2) that the complaint fails to state a claim against the defendant upon which relief can be granted.

On a motion such as this it is incumbent upon me to consider as true all the well-pleaded allegations of the complaint, but not the conclusions of law or any unwarranted deductions not based upon pleaded facts; and this is to be done in the light most favorable to the plaintiff while resolving all doubts which may arise on the allegations of the pleadings in view of their sufficiency. Solomon v. Neiser Bros., 93 F.Supp. 310 (D.C.Pa. 1950), affirmed 187 F.2d 735, C.A. 3, 1951. We take as true all facts well pleaded in the complaint. Kossick v. United Fruit Co., 365 U.S. 731, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961); rehearing denied 366 U.S. 941, 81 S.Ct. 1657, 6 L.Ed.2d 852; Supchak v. United States, 365 F.2d 844, C.A. 3, 1966; Melo-Sonics Corp. v. Cropp, 342 F.2d 856, C.A. 3, 1965; Manning v. Manning, 197 F.Supp. 871 (D.C.Pa., 1961); Federal Rules of Civil Procedure, Rule 8(f), 28 U.S.C.A.

The test is stated in Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957):

"In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

The plaintiff's theory for the support of his action is expressed in Paragraph 8 of the complaint: "That the activity of defendant is an abuse of authority both as Mayor and a private citizen and an abuse of Court process." We may quickly dispose of any theory averred in the complaint which is based upon an abuse of authority as a "private citizen"; for if this action is to have any hold here, it must be because of any activities of the defendant under color of law.

The Civil Rights Act relied upon by the plaintiff here for bringing this action provides as follows:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action of law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

Its criminal counterpart in pertinent part provides as follows:

"If two or more persons conspire to injure, oppress, threaten, or intimidate any citizen in the free exercise or enjoyment of any right or privilege secured by him by the Constitution or laws of the United States, or because of his having so exercised the same; or

If two or more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secure—

They shall be fined not more than $5,000 or imprisoned not more than ten years, or both." 18 U.S.C.A. § 241.

"Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any inhabitant of any State, Territory, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such inhabitant being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined not more than $1,000 or imprisoned not more than one year, or both." 18 U.S.C.A. § 242.

■ The action here is one for damages; sections 241 and 242 contain no provisions authorizing the awarding of damages. Their purpose is to procure criminal remedies or impositions of penalties only. These sections may not be used as bases for civil actions for damages. Fullerton v. Monongahela Connecting Ry. Co., 242 F.Supp. 622 (W.D.Pa. 1965); Pugliano v. Staziak, 231 F.Supp. 347 (W.D.Pa.1964), affirmed 345 F.2d 797, C.A.3, 1965. Therefore, they cannot support this cause of action.

28 U.S.C.A. § 1340, also relied upon by the plaintiff here for jurisdictional support, provides as follows:

"The district courts shall have original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue, or revenue from imports or tonnage except matters within the jurisdiction of the Customs Court. June 25, 1948, c. 646, 62 Stat. 932."

Since this action does not deal with revenue, the reference is obviously misplaced and needs no further consideration. The plaintiff no doubt intended to invoke the general jurisdiction provisions of 28 U.S.C.A. § 1343(3).[1]

■ Also, the plaintiff's reference to the creation by this Court of a common-law action has no basis as jurisdictional support for his claim. Federal courts are empowered to hear only such cases as are within the judicial power of the United States and have been entrusted to them as jurisdictional grants by Congress. Marbury v. Madison, 1 Cranch 137, 2 L.Ed. 60 (1803); 1 Barron & Holtzoff, Federal Practice and Procedure (Wright Edi-

---

1. 28 U.S.C.A. § 1343. Civil rights and elective franchise

"The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: * * * (3) To redress the deprivation, under color of any State law, statute, or-dinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States. * * * *"

tion) § 21. It must be noted that there is no diversity of citizenship here, for both parties are residents of the Commonwealth of Pennsylvania, and thus not within the authority granted by 28 U.S.C.A. § 1332.

The claim here then must stand or fall on authority of the Civil Rights Act. Considering the defendant's motion and arriving at a determination thereon as gauged by our authorities, we examine the averments of the complaint to ascertain whether or not they qualify this action under the Civil Rights Act. In Monroe v. Pape, 365 U.S. 167 (1961), the Supreme Court said at page 171, 81 S.Ct. 473, at page 476, 5 L.Ed.2d 492: "Its purpose is plain from the title of the legislation, 'An Act to enforce the Provisions of the Fourteenth Amendment to the Constitution of the United States * * * ' "

The Civil Rights Act prescribes two elements as requisites for recovery: (1) the conduct complained of must have been done by some person acting under color of law; and (2) such conduct must have subjected the complainant to the deprivation of rights, privileges, or immunities secured to him by the Constitution and laws of the United States. Basista v. Weir, 340 F.2d 74, 79, C.A.3, 1965; Marland v. Heyse, 315 F.2d 312, C.A.10, 1963; United States ex rel. Hoge v. Bolsinger, 211 F.Supp. 199, 201 (W.D. Pa.,1962).

The defendant argues that the complaint is lacking in any averments of fact that he acted in any way other than as a private citizen engaged in a political primary campaign, or that his actions were other than ordinary actions of any private citizen, and that in any event there is no averment of fact that the defendant acted in his capacity as mayor. The averment is that he happened to be the mayor when he committed certain wrongs upon the plaintiff during the time they were both candidates for the office of Mayor of the City.

Do the allegations as contained in the complaint lend any support to the averment as contained in Paragraph 8 "that the activity of the defendant is an abuse of authority as Mayor and a private citizen and an abuse of Court process," so as to give competence to the action under the Civil Rights Act? They must be factual allegations.

The phrase "under color of state law" has been defined as follows:

"Misuse of power, possessed by virtue of state law and *made possible only because the wrongdoer is clothed with the authority of state law*, is action taken 'under color of' state law." United States v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941); Roberts v. Trapnell, 213 F.Supp. 49 (D.C.Pa.1962). (Emphasis added.)

"The defendants' conduct was engaged in under color of state law if they were clothed with the authority of the state and *were purporting to act thereunder*, whether or not the conduct complained of was authorized or, indeed, even if it was proscribed by state law." Marshall v. Sawyer, 301 F.2d 639, 646, C.A.9, 1962, citing Monroe v. Pape, 365 U.S. 167, 187, 81 S.Ct. 473, 5 L.Ed. 2d 492 (1961). (Emphasis added.) To the same effect are the following: Stringer v. Dilger, 313 F.2d 536, C.A.10, 1963; Cohen v. Norris, 300 F.2d 24, C.A.9, 1962; Hoffman v. Halden, 268 F.2d 280, C.A.9, 1959; Baldwin v. Morgan, 251 F.2d 780, C.A.5, 1958.

The recent case of Jones v. Alfred H. Mayer Company, 255 F.Supp 115 (E.D. Mo.,1966), summarizes decisions as establishing the civil rights statutes to be directed toward government action, and concludes at page 119:

"A long line of cases makes it clear that Section 1983 * * * may be resorted to only in situations where state action is involved. It is true, of course, that the concept of 'state action' has been greatly expanded since the early Civil Rights Cases * * * and that it is not limited to state legislation, but state action in some form there must be * * * "

The averments of the complaint are:

(a) the defendant caused a libelous advertisement to be published in the local newspaper;

(b) the defendant hired a law firm to bring a civil action for libel against the plaintiff;

(c) the defendant caused a third party to bring suit against the plaintiff;

(d) and (e) the defendant used the discovery process in the libel action to harass and intimidate the plaintiff and to discourage his political supporters;

(f) the defendant used the discovery process for the purpose of collecting evidence for proposed criminal prosecution of the plaintiff and his supporters; and

(g) the defendant successfully requested that the plaintiff be placed in contempt for failing to give information in the course of the discovery process, which process, he alleged, was motivated by improper purposes.

We start with the first—the defendant caused a libelous advertisement to be published in the local newspaper. A paid advertisement per se does not declassify it as a publication as it may relate to freedom of expression, speech or press. Smith v. People of State of California, 361 U.S. 147, 150, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959); cf. Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 64, n. 6, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963); Associated Press v. United States, 326 U.S. 1, 20, 65 S.Ct. 1416, 89 L.Ed. 2013 (1945); Schneider v. State of New Jersey, 308 U.S. 147, 148, 164, 60 S.Ct. 146, 84 L.Ed. 155 (1939); Lovell v. City of Griffin, 303 U.S. 444, 452, 58 S.Ct. 666, 82 L.Ed. 949 (1938).

So, also, expression per se does not lose constitutional protection to which it would otherwise be entitled only because it appears in the form of a paid advertisement. New York Times Company v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). And where it involves criticism of public officials and of his official conduct, courts must be careful not " ' * * * to nullify action which encroaches on freedom of utterance under the guise of punishing libel'; for 'public men, are, as it were, public property,' and 'discussion cannot be denied and the right, as well as the duty, of criticism must not be stifled.' " New York Times Company v. Sullivan, supra, 376 U.S. at page 268, 84 S.Ct. at page 720.

In New York Times Company v. Sullivan, supra, 376 U.S. at page 269, 84 S.Ct. at page 720, the Court restated:

" 'The maintenance of the opportunity for free political discussion to the end that government may be responsive to the will of the people and that changes may be obtained by lawful means, an opportunity essential to the security of the Republic, is a fundamental principle of our constitutional system.' Stromberg v. [People of State of] California, 283 U.S. 359, 369, 51 S.Ct. 532, 536, 75 L.Ed. 1117. '[I]t is a prized American privilege to speak one's mind, although not always with perfect good taste, on all public institutions,' Bridges v. [State of] California, 314 U.S. 252, 270, 62 S.Ct. 190, 197, 86 L.Ed. 192, and this opportunity is to be afforded for 'vigorous advocacy' no less than 'abstract discussion. National Association for Advancement of Colored People v. Button, 371 U.S. 415, 429, 83 S.Ct. 328, 9 L.Ed.2d 405."

At page 271 of 376 U.S., at page 721 of 84 S.Ct., the Court quoted from Cantwell v. State of Connecticut, 310 U.S. 296, 310, 60 S.Ct. 900, 84 L.Ed. 1213, as follows:

" 'In the realm of religious faith, and in that of political belief, sharp differences arise. In both fields the tenets of one man may seem the rankest error to his neighbor. To persuade others to his own point of view, the pleader, as we know, at times, resorts to exaggeration, to vilification of men who have been, or are, prominent in church or state, and even to false statement. But the people of this nation have ordained in the light of history, that, in spite of the probability of excesses and

abuses, these liberties are, in the long view, essential to enlightened opinion and right conduct on the part of the citizens of a democracy.'"

The Court also quoted from National Association for Advancement of Colored People v. Button, 371 U.S. 415, 433, 83 S. Ct. 328, 9 L.Ed.2d 405; 376 U.S. at page 271, 84 S.Ct. 710, to the effect that erroneous statement is inevitable in free debate, and that it must be protected if the freedoms of expression are to have the breathing space that they need to survive.

At page 281 of 376 U.S., at page 726 of 84 S.Ct., the Court referred to Coleman v. MacLennan, 78 Kan. 711, 724, 98 P. 281, 20 L.R.A.,N.S., 361 (1908):

"'[I]t is of the utmost consequence that the people should discuss the character and qualifications of candidates for their suffrages. The importance to the state and to society of such discussions is so vast, and the advantages derived are so great that they more than counter-balance the inconvenience of private persons whose conduct may be involved, and *occasional injury to the reputations of individuals must yield to the public welfare, although at times such injury may be great.* The public benefit from publicity is so great and the chance of injury to private character so small that *such discussion must be privileged.*'" (Emphasis added.)

We must keep in mind that whatever is added to the field of libel is taken out of the field of free debate. New York Times Company v. Sullivan, supra, 376 U.S. at page 272, 84 S.Ct. 710; Sweeney v. Patterson, 76 U.S.App.D.C. 23, 128 F.2d 457, 458, 1942. Also at page 272–273 of 376 U.S., 84 S.Ct. 710 in the *New York Times* case, supra, the Court held that concern for the dignity and reputation of courts and judges does not justify the punishment as criminal contempt of criticism of the judge or his decision, as it had been held in Bridges v. State of California, 314 U.S. 252, 62 S.Ct. 190, 86 L.Ed. 192 (1941), and that this was true even though the utterances contained half-truths and misinformation. Penne-

kamp v. State of Florida, 328 U.S. 331, 66 S.Ct. 1029, 90 L.Ed. 1295 (1946). And at the same page, it said, "If judges are to be treated as 'men of fortitude, able to thrive in a hardy climate,' Craig v. Harney, supra, 331 [367] at 376, 67 S.Ct. [1249] at 1255, 91 L.Ed. 1546, surely the same must be true of other government officials, such as elected city commissioners. Criticism of their official conduct does not lose its constitutional protection merely because it is effective criticism and hence diminishes their official reputations."

Following that, the Court, at page 273 of 376 U.S., at page 722 of 84 S.Ct., added, "If neither factual error nor defamatory content suffices to remove the constitutional shield from criticism of official conduct, the combination of the two elements is no less inadequate." At page 291 of 376 U.S., at page 732 of 84 S.Ct., the Court reminded that "For good reason, 'no court of last resort in this country has ever held, or even suggested, that prosecutions for libel on government have any place in the American system of jurisprudence.'"

And while all of these related to the bringing of libel actions by public officials against non-officials, certainly no greater rights can accrue in the case of officials criticizing other officials contending for the same election post during an election campaign. That is not to say there cannot be an action of libel against any one guilty of committing a libelous act even though freedom of expression is involved. In that connection, the Court said at page 279 of 376 U.S., at page 276 of 84 S.Ct., "The constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not."

The holding in New York Times Company v. Sullivan, supra, was further enunciated in Rosenblatt v. Baer, 383 U.S.

75, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966), where the Court reviewed an award approved in a State proceeding brought by a supervisor of a county recreation area against a newspaper which had made publication of certain statements claimed to be libelous. The Court referred to the New York Times Company case, supra, and commented further in this language, 383 U.S. at page 85, 86 S.Ct. at page 675:

"The motivating force for the decision in New York Times was twofold. We expressed 'a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open and that [such debate] may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials.' 376 U.S. [254,] at 270, 84 S.Ct. [710] at 721. . . . There is, first, a strong interest in debate on public issues, and, second, a strong interest in debate about those persons who are in a position significantly to influence the resolution of those issues. Criticism of government is at the very center of the constitutionally protected area of free discussion. *Criticism of those responsible for government operations must be free,* lest criticism of government itself be penalized." (Emphasis added.)

However, in the case of Garrison v. State of Louisiana, 379 U.S. 64, at page 75, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964) it set aside a state criminal defamatory statute upon which the District Attorney *in a dispute with eight judges* was convicted upon what was judicially held to be criminal defamatory statements against the judges. The Court in this ruling held that the *New York Times Company* case, supra, equally limited the state power to impose criminal sanctions for criticism of the conduct of public officials.

At page 74 of 379 U.S., at page 216 of 85 S.Ct., after commenting upon the *New York Times Company* case, supra, Mr. Justice Brennan, who wrote the opinion, said:

"For speech concerning public affairs is more than self-expression; it is the essence of self-government. The First and Fourteenth Amendments embody our 'profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials.' New York Times Co. v. Sullivan, 376 U.S. [254,] at 270, 84 S.Ct. [710] at 721."

And at page 75 of 379 U.S., at page 216 of 85 S.Ct.:

"That speech is used as a tool for political ends does not automatically bring it under the protective mantle of the Constitution. For the use of the known lie as a tool is at once at odds with the premises of democratic government and with the orderly manner in which economic, social, or political change is to be effected. Calculated falsehood falls into that class of utterances which 'are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality. * * *' Chaplinsky v. [State of] New Hampshire, 315 U.S. 568, 572, 62 S.Ct. 766, 769, 86 L.Ed. 1031. Hence the knowingly false statement and the false statement made with reckless disregard of the truth, do not enjoy constitutional protection."

It is therefore obvious that any constitutionally unprotected publications stand in an isolated perimeter from constitutionally protected free speech whereby the Government and the public are safeguarded. And unless the charges fall within the exclusionary rule as announced in the *New York Times* case, we must treat such charges as constitutionally protected.

Recently, the Court of Appeals for the District of Columbia in Afro-American Publishing Co. v. Jaffe, t/a Douglas Pharmacy, 366 F.2d 649, at page 657, vividly phrased what appears to be the

unaccepted causa belli here, as it is contained and epitomized by the entire complaint, in these words:

"One who enters the public arena must expect latitude in the give-and-take of public debate, extending to the sharp and coarse comment, and, to excessive and perhaps unwarranted characterization."

The plaintiff in Paragraph 5(a) referred to the advertisement and "incorporated it" into the complaint. It was not attached as an exhibit and I have procured it for personal inspection as a matter of satisfying what might be necessary judicial inquiry. The advertisement is plainly repartee. It is quite evidently the defendant's part of a bilateral engagement in a vigorous, two-fisted, uninhibited verbal combat whereby two political gladiators fought for the cherished prize of nomination for the office of mayor of the City. The advertisement is, for the most part, defensive and obviously replies to the same kind of charges made by the plaintiff. With some few objective statements, they are broad and generalized terms of resentment and outrage against the opponent. It convinces us that the campaign was hot and furious and not one-sided. This reference to the advertisement is made as it may or may not support the allegations of the complaint as a whole.

█ The averment that the defendant caused a "libelous advertisement to be published in the local newspaper," alone, presents no cause of action here; since I must hold that even though such paid advertisement contained, if in fact it did, factual error, defamatory content of official reputation, or both, as such they were privileged communications under the clause of the First Amendment which provides that Congress shall make no law "abridging the freedom of speech, or of the press". Lacking the element of an invasion of constitutional rights, no authority may be read into the Civil Rights Act which would provide for a cause of action such as this by one candidate in a primary election against another candidate who, in the heat of the political bat-

tle, made defamatory remarks against that official's reputation. Standing alone as it does here, it presents no invasions of constitutional rights or basis for action under the Civil Rights Act.

█ All other complaints (b) through (g) may be grouped together as a multiple charge by the plaintiff that the defendant deprived him of due process of law during the time when the defendant happened to be a mayor of a city.

Amendment XIV provides in pertinent part: " * * * No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." Under these prohibitions are included the actions of state officials. Monroe v. Pape, 365 U.S. 167, 172, 81 S.Ct. 473, 5 L.Ed. 2d 492 (1961); Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945); United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941); Picking v. Pennsylvania Railroad Co., 151 F.2d 240, C.A. 3, 1945, rehearing denied 152 F.2d 753. But it must appear from the averments of the complaint that the defendant acted on state authority as it was delegated or vested in him, and that he abused such delegated or vested authority. Here it is charged that he abused court processes when he brought actions in a civil state court and resorted to such processes provided by the civil court while at the same time he was the mayor of the city.

In all of the averments of the complaint, nothing appears of state action except in (g) that the defendant was successful in his request to a judge of the Common Pleas Court to have the plaintiff placed in contempt for failing to give information in the course of the discovery process in the civil action then pending in that court. In any event, no allegation is made in the complaint that any of the acts asserted in (b) through (g) were mayoral acts. Averments were made only that civil discovery procedure

was used in anticipation of a criminal proceeding. But there is no averment that any criminal proceeding was in fact commenced or instituted. "The mere intention to take some action at some time in the future, which might or might not occur, and which if it does occur might present a situation coming under the Civil Rights Act, does not present any justiciable question under the Civil Rights Act" prior to the occurrence of the contemplated action. Progress Development Corporation v. Mitchell, 182 F.Supp. 681, 713 (N.D.Ill.1960).

Moreover, no averment is made that anything the defendant did was done because of any authority in the defendant as a mayor by virtue of any law of the state. The single allegation of fact upon which this action is laid is that the activity of the defendant was an abuse of authority as a mayor. But the required and basic ingredient of information to support this complaint as to how and under what circumstances as a mayor he breached the plaintiff's constitutional rights is non-existent. The fact that the plaintiff mentioned that a request was made of a judge of the Common Pleas Court does not include with it any allegation that the defendant was in a conspiracy with or received influence or sympathy from the judge in that court. Thus a bald inference is stated which has no factual significance upon which a cause of action under the Civil Rights Act could be based. And thus, it is as was stated in United States ex rel. Hoge v. Bolsinger, 211 F.Supp. 199 (W.D.Pa. 1962), aff'd. 311 F.2d 215, C.A. 3, 1962: "[That] in our opinion the complaint does not state a cause of action under the Civil Rights Act; if the rule were otherwise, every complaint against a State official by the simple expedient of aver-

ring conclusions would be cognizable in the federal courts under the Civil Rights Act." (At page 201 of 211 F.Supp.)

■ The plaintiff also includes § 1985(2) of the Civil Rights Act,[2] as basis for his action here. This deals with conspiracy to deprive another of his civil rights. As under § 1983, the acts proscribed under § 1985 must be perpetrated under color of state law. Williams v. Yellow Cab Co., 200 F.2d 302, C.A. 3, 1952, cert. den. sub nom. Dargan v. Yellow Cab Co., 346 U.S. 840, 74 S.Ct. 52, 98 L.Ed. 361 (1953). Under this section a private individual, acting in concert with state officials, may be acting under color of state law so as to come within the jurisdictional requirements of the Civil Rights Act. United States v. Guest, 383 U.S. 745, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966).

The plaintiff here alleges in his complaint that "the defendant and others conspiring with him" took the actions complained of and discussed above, that the "activities of the defendant and those cooperating with him" are in violation of the plaintiff's constitutional rights, and "that the conduct of defendant is an intentional and deliberate plan of his and others conspiring with him * * * to deprive him of other constitutional rights." This leaves much to the imagination and to speculation, but not to information.

In Pugliano v. Staziak, supra, the following was stated at page 349 of 231 F. Supp.:

"In an action for damages under the Civil Rights Act, the plaintiff must allege highly specific facts. * * * It is not enough to state here conclusory allegations without support in facts alleged."

---

2. 42 U.S.C.A. § 1985(2):

"If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, * * * or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws; * * * [I]n any case of conspiracy set forth in this section, * * * the party so injured or deprived may have an action for recovery of damages * * *."

And in United States ex rel. Hoge v. Bolsinger, supra, at page 201 of 211 F. Supp.:

"In actions of this nature, highly specific factual averments are required to defeat a motion to dismiss. General allegations, when unsupported by the complaint read as a whole, have been consistently rejected as insufficient."

To the same effect are Dinneen v. Williams, 219 F.2d 428, C.A. 9, 1955; Yglesias v. Gulfstream Park Racing Ass'n, 201 F.2d 817, 818, C.A.5, 1953; Viles v. Symes, 129 F.2d 828, 831, C.A. 10, 1942; Woodhouse v. Budwesky, 70 F.2d 61, 62 C.A. 4, 1934.

The principle was well stated in the recent decision in Lombardi v. Peace, 259 F.Supp. 222, 226 (S.D.N.Y.1966):

"In cases under the Civil Rights Act alleging that various individuals had conspired to deprive plaintiff of his constitutional rights, the complaint must do more than merely state vague and conclusory allegations respecting the existence of a conspiracy. Powell v. Workmen's Compensation Bd., 327 F.2d 131 (2d Cir. 1964); Morgan v. Sylvester, 125 F.Supp. 380 (S.D.N.Y.1954), aff'd. 220 F.2d 758 (2d Cir.), cert. denied 350 U.S. 867, 76 S.Ct. 112, 100 L.Ed. 768, petition for rehearing denied 350 U.S. 919, 76 S.Ct. 201, 100 L. Ed. 805 (1955). The plaintiff must allege with at least some degree of particularity overt acts which defendant engaged in that were reasonably related to the promotion of the claimed conspiracy. Powell v. Workmen's Compensation Bd., supra. Merely characterizing the defendant's conduct as conspiratorial or unlawful does not set out allegations upon which a Court can grant relief. * * * "

Viewing the allegations as a whole and in the light most favorable to the plaintiff, we must conclude that they lack factual or informational content and as such are insufficient to base the action on any of the provisions of the Civil Rights Act. The most that can be gleaned is a vague charge that in resorting to the state courts to remedy a wrong allegedly perpetrated against him, the defendant thereby brought the state courts and its officers into a conspiracy with him against the plaintiff. If this is the nature of his charge, the plaintiff is confusing and equating the concept of "procedure" with the concept of "authority" as the latter is used in the civil rights actions. Sigue v. Texas Gas Transmission Corporation, 235 F.Supp. 155 (W.D. La.1964).

The language found in the case of Skolnick v. Spolar, 317 F.2d 857, C.A. 7, 1963, is equally applicable here:

"This was a state court action between private parties in which the state merely furnished the forum and in which it had no interest. Those who are alleged to have conspired cannot be said to have been acting under color of state law within the meaning of the Federal Civil Rights Acts. The facts alleged do not support plaintiff's conclusory statements that his federal constitutional rights have been violated. * * Mere errors or irregularities in the state court proceedings are not sufficient to show a purposeful conspiracy to deny plaintiff due process. Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944); Hanna v. Home Insurance Company, 5 Cir., 281 F.2d 298 (1960). The Federal courts do not guarantee a citizen against the loss of a private civil action due to alleged irregularities in the trial thereof in a state court."

■ Though the Civil Rights Act grants protection to persons from conspiracies to deprive them of rights secured by the Constitution and laws of the United States, neither the Fourteenth Amendment nor the Civil Rights Act has the effect of taking into federal control the protection of private rights against invasion by individuals, and the protection of such rights and redress for such wrongs are left with states. Cole v. Smith, 344 F.2d 721, C.A. 8, 1965; Farmer v. Moses, 232 F.Supp. 154 (S.D.N.Y., 1964).

In summary, the plaintiff need not be deprived of any sufficiently asserted

rights for a remedy if one exists under the *New York Times* case, supra; but as such in this case they are against a private individual and redress rests solely with the state courts, Dinwiddie v. Brown, 230 F.2d 465, C.A. 5, 1956, cert. den. 351 U.S. 971, 76 S.Ct. 1041, 100 L.Ed. 1490, rehearing den. 352 U.S. 861, 77 S.Ct. 29, 1 L.Ed.2d 72; Dinneen v. Williams, supra; Shemaitus v. Froemke, 189 F.2d 963, C.A. 7, 1951.

For all of which reasons, the motion of the defendant to dismiss the complaint is granted.