Arien JOHNSON, by his mother and next friend, Jennie Johnson, on behalf of himself and all others similarly situated

v.

Barry HACKETT, individually and as a Police Officer of the Township of Bristol

and

Robert Thompson, individually and as a Police Officer of the Township of Bristol

and

Harry Merker, individually and as the Chief of Police of the Township of Bristol

and

Board of Commissioners of the Township of Bristol

and

The Township of Bristol.

Civ. A. No. 43735.

United States District Court
E. D. Pennsylvania.

May 22, 1968.

David H. Moskowitz, Weiss, Nelson & Moskowitz, Cornwells Heights, Pa., for plaintiff.

John J. Poserina, Jr., I. Leonard Hoffman, Ettinger, Poserina, Silverman, Dubin, Anapol & Sagot, Philadelphia, Pa., for defendant Hackett.

John W. Dean, III, Langhorne, Pa, for defendant Thompson.

Leonard B. Sokolove, Bristol, Pa., for defendants Township and Board of Commissioners.

## OPINION

LUONGO, District Judge.

This is a suit[1] under the Civil Rights Act of 1871, 42 U.S.C. §§ 1983, 1985 and 1986, seeking damages and injunctive relief against a township of the first class (Bristol Township, Bucks County), its Board of Commissioners, Chief of Police, and two of its policemen for alleged deprivation of the civil rights of Arien Johnson and other members of the Negro race residing in Bristol Township.

The Act of 1871, known as the Ku Klux Act, provides in pertinent part:

"§ 1983. *Civil action for deprivation of rights*

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any * * * person * * * to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

"§ 1985. *Conspiracy to interfere with civil rights—Preventing officer from performing duties*

\* \* \* \* \* \*

(3) If two or more persons * * * conspire * * * for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; * * * if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."

"§ 1986. *Same; action for neglect to prevent*

Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed,

---

1. Jurisdiction is under 28 U.S.C. § 1343.

shall be liable * * * for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; * *."

This suit is based on the following incidents charged in the complaint:

(1) On August 8, 1967 an unidentified police officer made a statement to a group of Negroes (Johnson was not in the group) in Bristol Terrace, a community in Bristol Township, that he "hated blackies". This incident was reported to the Chief of Police and to the Board of Commissioners.

(2) At about 5:00 p. m. on August 22, 1967 defendants Hackett and Thompson, Bristol Township police officers, while in uniform and on patrol in Bristol Terrace, offered to fight a group of Negroes (one of whom was Arien Johnson), and notified the group that they would return at 11:00 p. m. on that evening.

(3) At about 10:45 p. m. on August 22, 1967 in Bristol Terrace, Thompson asked one William Floyd (not otherwise identified) "Where are the night fighters?" and Hackett commented to the said Floyd "What's a dead nigger anyway?"

(4) At about 4:00 p. m. on the 23rd of August, 1967, while Hackett and Thompson were in uniform and riding in Bristol Terrace, "Hackett called Johnson 'a Chinese nigger',[2] to which Johnson responded with a similar expression, but without racial overtones." (Complaint, par. 13). An unidentified police officer arrested Johnson for disorderly conduct. Before making the arrest, the unidentified police officer inquired of Hackett and Thompson whether either had shouted anything to provoke Johnson's response. They denied having done so and "instructed, directed, and ordered the unidentified officer to complete the arrest of Johnson * * *." (Complaint, par. 15).

Plaintiff asserts claims against Hackett and Thompson under §§ 1983 and 1985(3); against Chief of Police

Merker and the Board of Commissioners under § 1986; and against Bristol Township on respondeat superior grounds. Each of the defendants has moved to dismiss the complaint for failure to state a claim under the Act of 1871. In addition, Bristol Township and the Board of Commissioners have moved to dismiss on the ground that they are not subject to suit under the Act.

I. *Bristol Township and Board of Commissioners.*

■■ Bristol Township, a municipal corporation, is not a "person" subject to suit under the Act, Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Under Pennsylvania law, the corporate power of townships of the first class is vested in the Board of Commissioners. 53 P.S. § 56502. As a body politic, the Board is likewise not subject to suit under the Act. Roberts v. Trapnell, 213 F.Supp. 47 (E.D.Pa.1962). No attempt has been made to sue the Commissioners individually.

The complaint will be dismissed as to Bristol Township and the Board of Commissioners.

II. *Hackett and Thompson.*

The claims against the police officers, Hackett and Thompson, are under § 1983 for acts committed by each allegedly depriving Johnson of constitutional rights, and under § 1985(3) for alleged conspiracy to purposefully discriminate against Johnson and other Negroes.

A. *Section 1983 claim.*

The essential elements of a claim under § 1983 are set forth in Basista v. Weir, 340 F.2d 74, 79 (3d Cir. 1965):

" * * * (1) the conduct complained of must have been done by some person acting under color of law; and (2) such conduct must have subjected the complainant to the deprivation of rights, privileges or immunities secured to him by the Constitution and laws of the United States."

---

2. At oral argument, plaintiff's counsel advised the court that there is no special connotation in the combination of names. The term complained of is "nigger".

Viewed in the light most favorable to plaintiff, the allegations of the instant complaint fail to establish either (a) that the acts of Hackett and Thompson were committed under color of law, or (b) that their conduct subjected Johnson to deprivation of rights secured to him by the Constitution and laws of the United States.

(a) *Color of law.*

United States v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941), laid down the rule that

"misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law."

That the acts of the officers must be under "pretense" of law was stressed in Screws v. United States, 325 U.S. 91, p. 111, 65 S.Ct. 1031, p. 1040, 89 L.Ed. 1495 (1945), wherein it was noted that "acts of officers in the ambit of their personal pursuits are plainly excluded."

The acts complained of here were not under "pretense" of law. They were not committed in the performance of any actual or pretended duty of policemen. They were not acts these defendants could not have committed but for the cloak of the state's authority. It is not alleged that the offer to fight was in any way related to the performance of police duties. Quite to the contrary, the purely personal nature of the offer is emphasized by the allegation that, before the challenge was issued, Thompson removed his gun belt, laying aside, as it were, the symbol or "pretense" of police authority. As for the name calling, I can conceive of no more "personal pursuit." No police duty or power of which I am aware can possibly be construed as clothing an officer with the authority of law to call anyone insulting names.

What plaintiff's position boils down to is that any act committed by a police officer while on duty and in uniform is under "color of law", even if the act is wholly unrelated to the performance of any of his duties. This contention attempts to equate "clothed with the authority of state law" to "wearing a policeman's uniform." Of course they are not the same. It is the nature of the act performed, not the clothing of the actor or even the status of being on duty, or off duty, which determines whether the officer has acted under color of law. If the officer was enabled to do what he did because of the authority of his office, even if what he did constituted an abuse of that authority, either by the excessiveness of his conduct or because the act was not actually, although apparently, authorized, the act is under "color of law." Thus, illegal arrest and search;[3] abuse of persons in custody;[4] obtaining a confession illegally;[5] and denying use of privately owned facilities open to the public on account of race[6] have been held to be acts under "color of law." But actions of off-duty policemen working as guards for private interests,[7] and the swearing out of a complaint by a police official against a person who made an obscene telephone call to him[8] were held to be personal acts not under "color of law." So also a charge of abuse of court process by a mayor of a city was held to be unrelated to the authority of his office and, therefore, not under "color of law."[9]

3. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

4. Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945); Pullen v. United States, 164 F.2d 756 (5th Cir. 1947); Catlette v. United States, 132 F. 2d 902 (4th Cir. 1943).

5. Williams v. United States, 341 U.S. 97, 71 S.Ct. 576, 95 L.Ed. 774 (1951); Wakat v. Harlib, 253 F.2d 59 (7th Cir. 1958).

6. Valle v. Stengel, 176 F.2d 697 (3d Cir. 1949).

7. Watkins v. Oaklawn Jockey Club, 183 F. 2d 440 (8th Cir. 1950).

8. Perkins v. Rich, 204 F.Supp. 98 (D.C. Del.1962), aff'd per cur. 316 F.2d 236 (3d Cir. 1963).

9. Sinchak v. Parente, 262 F.Supp. 79 (W.D.Pa.1966).

█ Plaintiff argues "color of law" action in that Hackett and Thompson participated in his arrest. The argument is based on the allegation that, after denying that they had done anything to provoke Johnson's outburst, Hackett and Thompson "directed" the unidentified officer to "complete" the arrest. (Par. 15). There is nothing in the complaint to indicate that these defendants had any authority to supervise or control the actions of their fellow policeman. In the absence of an allegation of such authority, there is not enough in the complaint to sustain a charge that these defendants participated in the arrest (the alleged illegality of which will be discussed infra) made by the unidentified policeman.

The complaint fails to charge acts committed by Hackett and Thompson under color of law and fails, therefore, to state a claim under § 1983.

(b) *Rights secured by the Constitution and laws of the United States.*

The complaint is fatally deficient also in that it fails to allege facts charging the violation or deprivation of a right secured by the Constitution or laws of the United States.

Johnson contends that his constitutional rights were violated in that (i) the arrest, search and detention were without cause and, therefore, unlawful, and (ii) that the name calling, offers to fight and harassment violated a constitutionally guaranteed "right of dignity."

(i) *Unlawful Arrest.*

As for the charge of unlawful arrest, it is alleged (par. 13) that Johnson, while on a public street or highway in Bristol Township, responded to Hackett's insult with a "similar expression, but without racial overtones." An unidenti-

fied officer, not a party to this suit, arrested Johnson for disorderly conduct,[10] a summary offense. The complaint alleges further that, prior to making the arrest, the unidentified officer inquired of these defendants whether they had done anything to provoke plaintiff's "expression." From this, it is reasonable to conclude that Johnson's "expression" was in the presence or hearing of the arresting officer.

█ A police officer of a township of the first class has the power to arrest, "without warrant and on view" for breach of the peace or disorderly conduct. 53 P.S. § 56403. See also Commonwealth v. Pincavitch, 206 Pa.Super. 539, 214 A.2d 280 (1965). The factual allegations of the complaint reveal that the unidentified officer had cause to arrest for disorderly conduct committed in his presence. In the face of those factual averments, the conclusory allegation of unlawful arrest is insufficient. Wagner v. Maroney, 263 F.Supp. 377 (W.D.Pa. 1967); Johnson v. Kreider, 264 F.Supp. 188 (M.D.Pa.1967); United States ex rel. Hoge v. Bolsinger, 311 F.2d 215 (3d Cir. 1962), cert. denied, 372 U.S. 931, 83 S.Ct. 878, 9 L.Ed.2d 735 (1963).

█ If it be assumed, arguendo, that the arresting officer did *not* have cause to arrest Johnson for disorderly conduct, that might state a civil rights claim against the arresting officer, but absent an allegation that he was party to the alleged conspiracy with Hackett and Thompson, that charge of unlawful arrest states no claim against Hackett and Thompson for violation of Johnson's civil rights.

█ Interpreting the complaint as charging that the policemen-defendants provoked Johnson to commit the offense

10. 18 P.S. § 4406

"4406. Disorderly conduct

Whoever wilfully makes or causes to be made any loud, boisterous and unseemly noise or disturbance to the annoyance of the peaceable residents near by, or near to any public highway, road, street, alley, park, square, or common, whereby the public peace is broken or disturbed or the traveling public annoyed, is guilty of the offense of disorderly conduct, and upon conviction thereof in a summary proceeding, shall be sentenced to pay the costs of prosecution and to pay a fine not exceeding ten dollars ($10), and in default of the payment thereof, shall be imprisoned for a period not exceeding thirty (30) days."

which resulted in his arrest, i. e., in effect "entrapped" him into the commission of the offense, that would not afford a basis for a civil rights claim.

"While entrapment may be a proper defense in a criminal action, a police officer's participation in such activity does not constitute a constitutional violation." Jones v. Bombeck, 375 F.2d 737, 738 (3d Cir. 1967).

Johnson's arrest and the conduct of Hackett and Thompson incident thereto state no claim of deprivation of Johnson's constitutional rights.

(ii) *Right of Dignity.*

 To state a claim for relief under § 1983 the plaintiff must show violation of some right guaranteed by the Constitution and laws of the United States.[11] Basista v. Weir, supra, emphasized that requirement and considered possible violations of 6th (counsel), 8th (bail) and 14th (due process) amendment rights. Plaintiff recognizes that he must show deprivation of a constitutionally guaranteed right. He claims as such right, the "right of dignity" which he defines as:

"* * * the right to be free from intentional, willful, wanton, and malicious unequal treatment, discrimination, harassment, intimidation, and slurs that reflect on the worth or value of members of a particular race, religion, or creed, by public officials, or persons in authority, while acting pursuant to such authority, * * *" (Complaint, par. 19).

Plaintiff concedes that the right of dignity is not mentioned or enumerated in the Bill of Rights and that it has not yet been recognized as such in any case, but he contends that it ought now to be recognized and declared as a constitutionally guaranteed right. He asserts that, although not so designated, right of dignity underlies the rulings in Hamilton v. Alabama, 376 U.S. 650, 84 S.Ct. 982, 11 L.Ed.2d 979 (1964) and Johnson v. State of Virginia, 373 U.S. 61, 83 S.Ct. 1053, 10 L.Ed.2d 195 (1963). It is not at all clear what comfort plaintiff derives from the *Johnson* and *Hamilton* cases. In *Johnson* a contempt of court conviction based on a refusal to comply with segregated seating requirements in a courtroom was set aside. That ruling was squarely on the ground that State compelled segregation of public facilities constitutes a denial of equal protection of the laws. In *Hamilton,* a contempt conviction against a Negro lady who refused to answer questions in court proceedings when addressed by her first name, rather than as "Miss * * *", was reversed in a Per Curiam order which simply cited Johnson v. State of Virginia.

 There are many individual rights which are not guaranteed by the Constitution of the United States. Protection of those rights is the duty of the states, the repository of all powers of sovereignty not committed to the federal government by the Constitution. See Flemming v. Adams, 377 F.2d 975 (10th Cir. 1967); Cole v. Smith, 344 F.2d 721 (8th Cir. 1965); Love v. Navarro, 262 F.Supp. 520 (C.D.Cal.1967); Bradford v. Lefkowitz, 240 F.Supp. 969 (S.D.N.Y.1965). These include the right to be secure from intentional and unintentional harm to person, reputation and property. The fact that such rights are violated by policemen does not spell out Federal Constitutional violations. Urbano v. Calissi, 384 F.2d 909 (3d Cir. 1967).

---

11. For example, Smartt v. Avery, 370 F.2d 788 (6th Cir. 1967); Morgan v. Labiak, 368 F.2d 338 (10th Cir. 1966); and Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) involved due process claims (4th and 14th Amendments); Lankford v. Gelston, 364 F.2d 197 (4th Cir. 1966), search and seizure (4th and 14th Amendments); Jewish War Veter

ans of United States v. American Nazi Party, 260 F.Supp. 452 (N.D.Ill.1960), freedom of religion (1st Amendment); Douglas v. City of Jeanette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943), freedom of religion and speech (1st Amendment); Jobson v. Henne, 355 F.2d 129 (2nd Cir. 1965), involuntary servitude (13th Amendment).

The private right to enjoy integrity of reputation (the law of libel and slander) and the public right to tranquility (laws dealing with breach of the peace) are matters of state concern. Beauharnais v. People of State of Illinois, 343 U.S. 250, 72 S.Ct. 725, 96 L.Ed. 919 (1952). Defining and punishing the use in public places of words likely to cause a breach of the peace is a matter "within the domain of state power". Chaplinsky v. State of New Hampshire, 315 U.S. 568, 573, 62 S.Ct. 766, 770, 86 L.Ed. 1031 (1942). Common law slander by a public official is not within the ambit of civil rights protected under the Constitution. Hopkins v. Wasson, 227 F.Supp. 278 (E.D.Tenn.S.D.1962).

It is state law which defines the interests entitled to be protected and determines redress for the violations thereof. Only limited protection is afforded the right to be free from harmful expression. The law does not grant redress for all embarrassing or insulting expressions, it gives relief only for those which cause harm to a person's reputation, or hold him up to hatred, contempt or ridicule, or injure him in his business, trade or profession. See, e. g., 12 P.S. § 1581 et seq.; Bogash v. Elkins, 405 Pa. 437, 176 A.2d 677 (1962); Cosgrove Studio and Camera Shop, Inc. v. Pane, 408 Pa. 314, 182 A.2d 751 (1962); McClurg v. Ross, 5 Binn. 218 (Pa.1812); and 18 P.S. § 4412. More latitude is extended to the spoken word than to printed matter on the theory that words are spoken in the heat of the moment and quickly vanish, whereas writing reflects more deliberate and considered action and the effect is more lasting. Collins v. Dispatch Publishing Co., 152 Pa. 187, 25 A. 546 (1893).

What plaintiff seeks to advance as a new right secured by the Constitution is simply the right to be free from insulting language or conduct likely to cause or result in a breach of the peace, one of the myriad of individual rights committed to the state's protection. That the insult here was racial, rather than ethnic, religious, political, family,

personal or other, does not change the essential character of the right violated and does not transform it into a right secured by the Constitution. In a word, the conduct of these defendant policemen was uncouth, not unconstitutional.

**B.** *Section 1985(3) claim.*

What has been said with respect to the claim under § 1983 essentially disposes of the claim that Hackett and Thompson conspired "to purposefully discriminate against Negroes residing in Bristol Terrace * * * to interfere with their rights of lawful assembly, and to cause their arrest, and to hinder them in their pursuit of lawful activities" in violation of § 1985(3). To state a claim under this section, the complaint must set forth specific factual allegations rather than mere conclusory statements, United States ex rel. Hoge v. Bolsinger, supra; Watson v. Devlin, 167 F.Supp. 638 (D.Mich.1958), and the factual allegations must disclose that two or more persons conspired to deprive a person or class of persons of the equal protection of the laws or of the equal privileges and immunities under the law, or conspired to prevent or hinder the constituted authorities from giving to all persons the equal protection of the laws. Collins v. Hardyman, 341 U.S. 651, 71 S.Ct. 937, 95 L.Ed. 1253 (1951). See Whittington v. Johnston, 201 F.2d 810 (5th Cir. 1953), cert. denied, 346 U.S. 867, 74 S.Ct. 103, 98 L.Ed. 377; Miles v. Armstrong, 207 F.2d 284 (7th Cir. 1953).

The sum total of the factual allegations of the instant complaint, as they bear on the charge of conspiracy to purposefully discriminate against Negroes, consists of (1) the statement of an unidentified police officer that he "hated blackies"; (2) an offer by Hackett and Thompson to fight several Negroes, including plaintiff; and (3) the calling of a racially insulting name by Hackett which provoked a response resulting in (4) Johnson's arrest by an unidentified police officer. Nothing in the complaint connects Hackett or Thompson with the first incident. As to the fourth

incident, it has been noted elsewhere that there is no charge that the unidentified policeman who made the arrest was part of the alleged conspiracy with Hackett and Thompson. This leaves as the sole factual basis for the charge of conspiracy the offers to fight and the name calling. Those isolated acts are insufficient to state a claim under § 1985(3) either for denial of equal protection of the laws or for denial of equal privileges and immunities under the law. The conclusory allegation that the cited acts were malicious, wilful and in bad faith as a result of a conspiracy to discriminate against Negroes does not correct the deficiency. See Morgan v. Sylvester, 125 F.Supp. 380 (S.D.N.Y.1954), aff'd 220 F.2d 758 (2d Cir. 1955), cert. denied, 350 U.S. 867, 76 S.Ct. 112, 100 L.Ed. 768, rehearing denied, 350 U.S. 919, 76 S.Ct. 201, 100 L.Ed. 805 (1955).

The complaint fails to state a claim against Hackett and Thompson, either under § 1983 or § 1985(3) and the action will be dismissed as to them.

III. *Police Chief Merker.*

The complaint charges that Harry Merker, the Chief of Police of Bristol Township, had been informed of the several incidents set forth in the complaint, that he was aware of the existence of a conspiracy to commit wrongs prohibited by § 1985, that it was within his power to prevent them, and that he neglected and refused to prevent them. Since the acts set forth in the complaint fail to allege an actionable conspiracy under § 1985 and fail to allege deprivation of any right guaranteed by the Constitution, *a fortiori*, the complaint fails to state a claim against Merker under § 1986.

The complaint will be dismissed as to defendant Merker.

ORDER

And now, this 22nd day of May, 1968, it is ordered that the Motions of all defendants to Dismiss the Complaint be and they are hereby granted.