**PEOPLES CAB CO., a corporation qualified as a public utility under the laws of the Commonwelath of Pennsylvania, et al.**

v.

**George I. BLOOM.**

**Civ. A. No. 70–1402.**

United States District Court,
W. D. Pennsylvania.

Aug. 19, 1971.

Harry Alan Sherman, Pittsburgh, Pa., for plaintiffs.

Milton W. Lamproplos, of Eckert, Seamans, Cherin & Mellott, Pittsburgh, Pa., for defendant.

## OPINION AND ORDER

MARSH, Chief Judge.

Plaintiffs, a Pennsylvania corporation having its principal place of business in the City of Pittsburgh, and two individuals, residents of that city, who are the sole owners of the stock of the corporation and the managing directors and officers thereof, have brought suit for damages, compensatory and punitive, against the defendant under the Civil Rights Act, 42 U.S.C. § 1983,[1] 28 U.S.C. § 1343,[2] "the Constitution of the United

---

[1]. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

[2]. "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
" * * *
"(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;
" * * *."

States, Art. 1 par. [sic] 10, cl. 1,[3] Art. 4, par. [sic] 2, clause 1,[4] and 14th Amendment, par. [sic] 1." [5] (Footnotes added.) The corporation is the holder of a public utility certificate for the operation of a taxicab business in Pittsburgh. The defendant is the duly appointed and acting Chairman and member of the Public Utility Commission of Pennsylvania, and a resident of Washington County Pennsylvania.[6]

■ The Amended Complaint is couched in broad and conclusory language. Scarcely any facts are set forth to support the conclusions. A civil rights complaint should set forth with specificity the acts and conduct of the defendant which worked an infringement of civil rights which will permit an informed ruling whether the wrong complained of is of federal cognizance.[7] We think the Amended Complaint lacks the factual specificity required to support a cause of action under the Civil Rights Act.

Stripped of some of the conclusory language, it appears that the Amended Complaint charges that the defendant, as Chairman of the Pennsylvania Public Utility Commission (PUC) conspired with an officer of Yellow Cab Company and representatives of its parent company, Checker Motors, to reestablish Yellow Cab as a taxicab monopoly within the City of Pittsburgh and destroy the plaintiffs' taxicab business. As part of this conspiracy, it is alleged that the defendant "permitted several hundred" unlicensed persons to unlawfully and unfairly compete with the plaintiffs, but not with Yellow Cab; that the defendant "did coerce and 'persuade' plaintiffs" not to contest a proposed rate increase for Yellow Cab, by implying "that he was in effect 'keeping an eye' on plaintiffs leasing plan, which plan could be terminated by defendant if plaintiffs did not accede to his coercion" (plaintiffs' brief, p. 2);[8] that plaintiffs' " 'leasing' plan was mere implementation" of the previous driver incentive plan which the PUC had ordered discontinued, but which order was reversed: People Cab Co. v. Pennsylvania Public Utility Comm., 185 Pa.Super. 628, 137 A.2d 873 (1958); that plaintiffs under the " 'leasing' plan" entered into contracts for purchase of many taxicabs which were leased to drivers from which plaintiffs anticipated profits; and that defendant did "make threats to revoke the certificate of their corporate plaintiff",[9] and did publicly malign plaintiffs in the press, and did impugn the insurable status of their equipment, and did otherwise abuse plaintiffs so as

3. Art. 1, § 10, cl. 1, provides in part:
   "No State shall * * * pass any * * * Law impairing the Obligation of Contracts * * *."

4. Art. 4, § 2, cl. 1, provides in part:
   "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."

5. The Fourteenth Amendment, § 1, provides:

   "All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

6. There is no allegation of diversity of citizenship between plaintiffs and defendant.

7. Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944); Fletcher v. Hook, 446 F.2d 14 (3d Cir. 1971); Gittlemacker v. Prasse, 428 F.2d 1 (3d Cir. 1970); Rodes v. Municipal Authority of the Borough of Milford, 409 F.2d 16 (3d Cir. 1969); United States ex rel. Hoge v. Bolsinger, 311 F.2d 215 (3d Cir. 1969); Pugliano v. Staziak, 231 F.Supp. 347 (W.D.Pa.1964), and the cases cited therein, affd. 345 F.2d 797 (3d Cir. 1965).

8. There is no averment that plaintiffs did or did not accede to the coercion or "persuasion".

9. The Public Utility Commission consists of five appointed members, three of whom constitute a quorum. The Chairman or a member may undertake or hold any in-

to impair the obligation of their several contracts, destroy the value of their properties, cause them loss of income and revenue, and destroy "their good names" to their great loss and damage.[10]

The defendant moved to dismiss on the grounds (1) that the court lacked jurisdiction of the subject matter of the Amended Complaint, and (2) that the Amended Complaint fails to state a claim upon which relief can be granted. Six reasons are specified. We think the motion should be granted on both grounds.

The terms of § 1983 make it eminently plain that two elements are requisite for recovery. First, the conduct complained of must be done by some person acting under color of law. Second, such conduct must have subjected the plaintiffs to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States.[11]

Viewed in the light most favorable to plaintiffs, the allegations of the Amended Complaint fail to establish either that the conduct of defendant was exercised under color of law, or that his conduct subjected plaintiffs to deprivation of rights secured by the Constitution and laws of the United States.

### Color of Law

At the threshold it must be emphasized that nowhere in their Amended Complaint have plaintiffs alleged that the defendant as Chairman of the Public Utility Commission, "by the scheming, conspiratorial actions" (plaintiffs' brief, p. 2), was acting under color of law, which is an indispensable element of the Civil Rights Act, 42 U.S.C. § 1983. Nowhere in the Amended Complaint is a State "statute, ordinance, regulation, custom, or usage" specifically identified by which the defendant subjected plaintiffs to the deprivation of any rights, privileges or immunities secured by the Constitution and laws of the United States. This omission in itself is sufficient to sustain the motion.

■ In order that defendant's actions be "under color of" state law, there must be a "misuse of power, possessed by virtue of state law * * *." United States v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941). It is well settled that a law enforcement officer, who misuses the power possessed by virtue of state law and made possible only because he, the wrongdoer, is clothed with the "badge" and authority of state law is liable in damages to a citizen who is deprived of guaranteed constitutional rights, usually the denial of citizen rights by official misapplication or perversion of laws establishing procedural safeguards in the nature of due process. Frequent examples are policemen and jailors who under color of state or local law violate a per-

---

vestigation, inquiry or hearing which the Commission has power to undertake or hold. However, any determination will not become effective until approved and confirmed by at least a quorum of the Commission. Only the Commission, or a quorum, has power and authority to issue and revoke certificates of public convenience. 66 Pa. Purdon's Stat.Ann. § 452 et seq.

10. There is considerable doubt that plaintiffs have a jurisdictional right under the Civil Rights Act to maintain an action for damage or injury to property and property rights as distinct from rights, privileges or immunities of personal liberty. Hague v. C. I. O., 307 U.S. 496, 531, 59 S.Ct. 954, 83 L.Ed. 1423 (1939);

Tichon v. Harder, 438 F.2d 1396 (2d Cir. 1971); Cisneros v. Cavell, 437 F.2d 1202 (3d Cir. 1971); National Land & Investment Company v. Specter, 428 F. 2d 91 (3d Cir. 1970); Eisen v. Eastman, 421 F.2d 560 (2 Cir. 1969); Martin v. King, 417 F.2d 458, 461 (10th Cir. 1969).

11. Adickes v. S. H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Basista v. Weir, 340 F.2d 74, 79 (3d Cir. 1965); Stringer v. Dilger, 313 F.2d 536 (10th Cir. 1963); Cohen v. Norris, 300 F.2d 24, 30 (9th Cir. 1962); Johnson v. Hackett, 284 F.Supp. 933, 936 (E.D.Pa.1968); Sinchak v. Parente, 262 F.Supp. 79, 83 (W.D.Pa.1966); Kregger v. Posner, 248 F.Supp. 804, 806 (E.D. Mich.1966).

son's constitutional rights and commit constitutional torts.[12]

Although the defendant is alleged to have abused the powers of his office as Chairman of the PUC to accomplish the object of the conspiracy, it is not shown that he exercised any State power; nor was it shown that he abused any State power,—he did not use State power to achieve the object of the conspiracy. It was not alleged that the defendant as Chairman or member of the PUC was engaged in any inquiry, investigation, or hearing involving the plaintiffs, nor that he exceeded any State given authority in furtherance of the conspiracy. Before plaintiffs can maintain a federal action against the defendant, as Chairman, their Complaint must show that his conduct embraced functions he was authorized to perform by the Commonwealth of Pennsylvania. *Cf.* Simmons v. Whitaker, 252 F.2d 224 (5th Cir. 1958).

Plaintiffs seem to rely entirely for recovery under the Civil Rights Act on the allegations that the defendant as Chairman of the PUC conspired to destroy their business and reestablish Yellow Cab as a monopoly in Pittsburgh. They seem to emphasize that this object was accomplished by defendant solely by misusing the title and influence of his state created office by the aforesaid means which were performed "clearly outside the authority or jurisdiction of the office" (plaintiffs' brief, p. 12); "the acts complained of were not done during exercise of any judicial function" (plain-

tiffs' brief, p. 11); and *"None of the acts charged against the defendant were done in course of official hearing or determination of the Commission or its Chairman."* (Plaintiffs' brief, p. 13; emphasis in original.) We might add that nothing allegedly done by defendant as Chairman in furtherance of the conspiracy was authorized by the State.

Thus, it is clear, as alleged in the Amended Complaint, that defendant pursuant to the conspiracy caused damage to the plaintiffs' property "under color of his high office", but not under authority or color of any identifiable state statute, ordinance, regulation, custom or usage. No state action is shown to be involved.[13]

### Rights Secured by the Constitution and Laws of the United States.

Even if it should be held that defendant acted under color of law, the second element required by § 1983 does not factually appear in the Amended Complaint, viz., that defendant's conduct subjected plaintiffs to the deprivation of rights, privileges and immunities secured by the Constitution and laws of the United States.

We think plaintiffs' Amended Complaint is analogous to those alleging tortious conduct of state officials, which complaints have been dismissed on motion because the tort or wrong invoked did not constitute an invasion of the constitutional rights of the plaintiff.[14]

12. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Rivers v. Royster, 360 F.2d 592 (4th Cir. 1966); Basista v. Weir, 340 F.2d 74 (3d Cir. 1965); Marland v. Heyse, 315 F.2d 312 (10th Cir. 1963); Stringer v. Dilger, 313 F.2d 536 (10th Cir. 1963); Cohen v. Norris, 300 F.2d 24 (9th Cir. 1962); Johnson v. Crumlish, 224 F.Supp. 22 (E.D.Pa.1963); United States ex rel. Hancock v. Pate, 223 F.Supp. 202 (N.D. Ill.1963).

13. Cf. Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944); Simmons v. Whitaker, 252 F.2d 224 (5th Cir. 1958); McCartney v. State of West Vir-

ginia, 156 F.2d 739 (4th Cir. 1946); Male v. Crossroads Associates, 320 F. Supp. 141 (S.D.N.Y.1970); Mosher v. Beirne, 237 F.Supp. 684 (E.D.Mo.1964).

14. Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944), state officials refused to file a correct election certificate as required by state law, thereby depriving plaintiff of an election to the office of Congressman; Isenberg v. Prasse, 433 F.2d 449 (3d Cir. 1970), malpractice by state employed dentist; Heller v. Roberts, 386 F.2d 832 (2d Cir. 1967), assistant district attorney slandered opposing lawyer; Kent v. Prasse, 385 F.2d 406 (3d Cir. 1967), inmate of penitentiary

Complaints against state officials admittedly acting under color of state law have been dismissed on motion for the same reason.[15]

It seems to be self-evident that a conspiracy to reestablish an intrastate taxicab monopoly in the City of Pittsburgh "contrary to the duties, authority and lawful purpose of the Public Utility Commission[16] and contrary to the applicable provisions of the Acts of Congress declaring unlawful monopolies and combinations in restraint of trade, as set out in 15 U.S.C. par. [sic] 1" (Amended Complaint, ¶ 6), does not constitute violation of a right, privilege or immunity guaranteed to persons by a law of the United States. The Sherman Act (15 U.S.C. § 1 et seq.) makes it clear that it was not the intention of Congress to interfere with or restrain state action or official action directed by a state in those fields where the state has an interest and right to regulate and even limit competition in a business charged with a public trust or interest. Parker v. Brown, 317 U.S. 341, 350–352, 63 S.Ct. 307, 87 L.Ed. 315 (1943). Thus, although the conspiracy may have violated state public utility law pertaining to an intrastate taxicab monopoly, it did not violate any federal law securing individual rights.

Neither do any of the alleged acts of the defendant in furtherance of the conspiracy match up with a constitutional tort (see cases cited at footnote 12, *supra*), nor do they constitute a deprivation of equal rights based on class, racial or religious discrimination.

Plaintiffs have not related the alleged constitutional violations to any allegations of fact; they have not specified how or in what manner their federal rights have been violated.

We search in vain to detect what right, privilege or immunity guaranteed by § 1 of the Fourteenth Amendment the individual plaintiffs were deprived of by the misconduct of the defendant.[17] It does not appear: (a) that they were deprived of any property by any statute of the State or by any official action of the PUC; (b) that there was any inquiry, investigation or hearing involving the plaintiffs' taxicab business which was undertaken or held by defendant or any other PUC Commissioner or agent; (c) that any determination or recommendation was made to the PUC by the defendant with reference to the plaintiffs' taxicab business; (d) that there

---

injured when forced to work on a machine known to be defective and dangerous; Sanders v. Erreca, 377 F.2d 960 (9th Cir. 1967), state officials abused their positions and power by threats and fraudulent misrepresentation causing monetary loss to plaintiff; Kamsler v. M. F. I. Corporation, 359 F.2d 752 (7th Cir. 1966), conspiracy to extort money and malicious prosecution; Johnson v. Hackett, 284 F.Supp. 933 (E.D.Pa.1968), policemen on duty offered to fight negroes and slandered them; Hopkins v. Wasson, 227 F.Supp. 278 (E.D.Tenn.1962), affd. 329 F.2d 67 (6th Cir. 1964), dismissed teacher slandered by public school officials.

15. Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944); Kent v. Prasse, 385 F.2d 406 (3d Cir. 1967); Sanders v. Erreca, 377 F.2d 960 (9th Cir. 1967); Flemming v. Adams, 377 F.2d 975 (10th Cir. 1967).

16. The purpose of the PUC is to protect the public interest by regulating public service companies in competition with each other, and licensing and regulating intrastate monopolies. See: Yellow Cab Co. v. Pennsylvania Public Utility Comm., 161 Pa.Super. 41, 54 A.2d 301 (1947); 30 P.L.E., Public Utility Commission, § 1. A local taxicab company engaged in independent local service "is not an integral part of interstate transportation. And a restraint on or monopoly of that general local service, without more, is not proscribed by the Sherman Act." United States v. Yellow Cab Co., 332 U.S. 218, 233, 67 S.Ct. 1560, 1568, 91 L.Ed. 2010 (1947).

17. "Natural persons, and they alone, are entitled to the privileges and immunities which Section 1 of the Fourteenth Amendment secures for 'citizens of the United States'." Hague v. C. I. O., 307 U.S. 496, 514, 59 S.Ct. 954, 963, 83 L.Ed. 1423 (1939).

**1242**

was "some racial, or perhaps otherwise class-based, invidiously discriminatory animus" behind the defendant's conduct.[18]

■ The provisions of § 1 of the Fourteenth Amendment are limitations on the power of the states. No State action has deprived plaintiffs of any personal liberty or any property, nor purposely discriminated against them. The alleged wrongful conduct on the part of the defendant was not authorized by the Commonwealth of Pennsylvania. Cf. McCartney v. State of West Virginia, 156 F.2d 739, 742 (4th Cir. 1946). In short, we do not perceive any right, privilege or immunity of which the plaintiffs were deprived; damage to their business property caused by the conspiracy seems to be the gravamen of their Complaint (see footnote 10, *supra*).

■ With reference to Art. I, § 10, cl. 1 (see footnote 3, *supra*), there is no allegation which even remotely suggests that the State passed a law impairing any of plaintiffs' contracts with the drivers of taxicabs.

Article IV, § 2, cl. 1 (see footnote 4, *supra*) "in effect, prevents a state from discriminating against citizens of other states in favor of its own." Hague v. C. I. O., 307 U.S. 496, 511, 59 S.Ct. 954, 962, 83 L.Ed. 1423 (1939). No violation of this Constitutional provision is disclosed in the Amended Complaint.

■ No statutory provision imposes a specific duty on the Chairman, as such, to enforce the PUC laws and prevent the "several hundred" unlicensed drivers from competing with plaintiffs' taxicabs. No facts appear to substantiate the conclusory averments that defendant "denied to plaintiffs equal protection of the laws, and has contrariwise permit-

ted" this unlawful and unfair competition "solely with plaintiffs, and not in direct competition with Yellow Cab Co." (¶ 7, Amended Complaint). There is no allegation that enforcement of the public transportation laws in Pittsburgh was entrusted solely to the defendant. Moreover, even conscious selectivity in enforcement of the criminal laws of a state is not in itself a federal constitutional violation when not based upon an unjustifiable standard such as race, religion, or other arbitrary classification. No such unjustifiable standard in support of a denial to plaintiffs of equal protection of the laws is alleged in the Amended Complaint. Cf. Oyler v. Boles, 368 U. S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962).

■ If, as part of the conspiracy, the defendant undertook to publicly malign plaintiffs in the press, make threats to revoke the certificate of the corporate plaintiff, impugn the financial and insurable status of their equipment, and did otherwise abuse plaintiffs thereby destroying the value of their properties and their good names (¶ 11, Amended Complaint),[19] such conduct in itself would not be redressable under § 1983. It is clear that slander by a public official "is not cognizable under the Civil Rights Act." Church v. Hamilton, 444 F.2d 105 (3d Cir. 1971); Heller v. Roberts, 386 F.2d 832 (2d Cir. 1967); Hopkins v. Wasson, 227 F.Supp. 278 (E.D. Tenn.1962), affd. 329 F.2d 67 (6th Cir. 1964); Johnson v. Hackett, 284 F.Supp. 933 (E.D.Pa.1968). Cf. Sanders v. Erreca, 377 F.2d 960 (9th Cir. 1967). As stated in Johnson v. Hackett, *supra*, 284 F.Supp. at p. 940:

"The private right to enjoy integrity of reputation (the law of libel and slander) and the public right to tranquility * * * are matters of state

---

18. Quotation from Griffin v. Breckenridge (1971), 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338.

19. No facts are alleged to substantiate the conclusory statement in ¶ 11 of the Amended Complaint. See text and supporting cases cited in footnote 7, supra.

concern. Beauharnais v. People of State of Illinois, 343 U.S. 250, 72 S.Ct. 725, 96 L.Ed. 919 * * * (1952). * * * Common law slander by a public official is not within the ambit of civil rights protected under the Constitution."

Similarly, we think that the right to be free from coercion, persuasion and threats, founded or unfounded, like the right to be secure from intentional or unintentional harm to person, reputation and property, are not guaranteed by the Constitution or laws of the United States, but protection of those rights is the duty of the state.[20]

### Immunity

Notwithstanding that it is alleged in the Amended Complaint that the defendant used the prestige and influence of his State office to accomplish the object of the conspiracy and bring about the destruction of plaintiffs' taxicab business, he contends that as Chairman of the PUC he is entitled to immunity from personal liability.

But since it does not appear in the Amended Complaint that the defendant acted in accomplishing the purpose of the conspiracy under color of law, in excess of any authorized function or jurisdiction, nor in the exercise of any quasi-judicial, legislative or ministerial proceeding, it is our opinion that the action should not be dismissed on the ground of immunity or privilege. See: Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1872); Lynch v. Johnson, 420 F.2d 818 (6th Cir. 1970); Bauers v. Heisel, 361 F.2d 581, 590-591 (3d Cir. 1966).

An appropriate order will be entered.

---

20. See Sanders v. Erreca, 377 F.2d 960, 964 (9th Cir. 1967); Cole v. Smith, 344 F.2d 721, 724 (8th Cir. 1965); Johnson v. Hackett, 284 F.Supp. 933, 939 (E.D.Pa. 1968); Kent v. Prasse, 265 F.Supp. 673, 674 (W.D.Pa.1967), affd. 385 F.2d 406 (3d Cir. 1967); Bradford v. Lefkowitz, 240 F.Supp. 969, 976-977 (S.D.N.Y. 1965).